391 So.2d 11 (1980)
Ida YOUNG, individually and as natural Tutrix of her minor child Renee Young
v.
ORLEANS PARISH SCHOOL BOARD, New Orleans Public Schools, et al.
No. 11271.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1980.
Rehearing Denied December 19, 1980.
*12 Law Office of Bendana & Carlton, Orlando G. Bendana, Wayne H. Carlton, Jr., New Orleans, for plaintiff-appellee Ida Young.
Richard G. Verlander, Jr. of Polack, Rosenberg, Rittenberg & Endom, New Orleans, for defendants-appellants.
Before SAMUEL, GULOTTA and BOUTALL, JJ.
BOUTALL, Judge.
Ida Young, individually and as natural tutrix of her minor child, Renee Young, sued the Orleans Parish School Board for damages and personal injuries when Renee, at that time 12½ years old, stepped on a nail protruding from a board in one of his school buildings. The trial court rendered judgment in favor of plaintiff, and the defendant school board has appealed. Plaintiff answers to the appeal seeking an increase in quantum.
While attending school on September 22, 1977, Renee Young prepared for his 5th period physical education class by changing into his uniform and placing his clothing and other belongings in an unused hallway storage area adjacent to the boys' locker room facility. Dressing and locker storage facilities were available in the locker room, but Renee had no lock and hence chose to hide his clothing in an unused hallway adjacent to the locker room. This hallway afforded passage from the boys' locker room to an outside exit of the building, but because of vandalism, the outside door was kept securely fastened. On one side of the passageway, there was unused shelving, and on the opposite side was a wall dividing the passageway from a staff room. When Renee returned after his physical education class, he began to look for his clothing which he had hidden under the unused shelving, and in the process, stepped back upon a piece of plywood several feet square, from which some nails protruded. One of the nails pierced his foot, causing the injuries complained of.
There is no direct evidence establishing how the plywood got on the floor of the passageway near the unused shelving. Renee testified that he did not see the board there when he hid his clothes at the beginning *13 of the class period. Similarly, the athletic coach testified that he had been in the area at the beginning of that class and he did not see the board there. The custodian of the building testified that he had swept the area the evening before, and had been through the area several times prior to the incident, and he did not see the board. Although these witnesses' testimony does not show how the board got there, it serves to establish a time frame within which the board made its appearance, that is, after the start of the 5th period and before the end of the 5th period. The board was identified as a piece of plywood that had been used in one of the exterior windows of the staff room as a temporary replacement for a glass window that had been broken out by vandals. The defendants theorize that perhaps some vandals tore the board from the window and placed it in the location where it caused injuries. We disagree and point out that the only reasonable hypothesis is that the board was taken from the window by some schoolboard employee and placed in the hallway alongside the unused shelving.
We are led to this conclusion by a number of factors. The first is that this occurred during school and at a time when there were a number of people in the general vicinity, a rather unlikely time for vandalism of this type. Defendant's evidence convinces us that this board had to be forcibly removed from the outside of the exterior window of the staff room, transported inside in some way and across the staff room into the hallway, or through the hallway itself, to be placed alongside the unused shelving. While it is easy to visualize a vandal tearing down the board or perhaps kicking it out of the window from inside, the only reasonable explanation for its appearance in the unused hallway alongside the unused shelving is that some employee put it there, presumably as a convenient storage place.
Unfortunately, the evidence shows that this board was situated out in the passageway and lying flat with nails protruding up from the end of it. Such a placement in a passageway, even one that is used only rarely, constitutes negligence, especially when we consider that it is foreseeable that young children would use this passageway at one time or another. At the same time, we cannot conclude that there was contributory negligence on the party of young Renee, who had been in the area an hour earlier and thus had no advance warning and who, while searching for his hidden books, took a step backwards, stepping upon the nail. Although the trial judge rendered no written reasons for judgment, the evidence in this case is such as to support the conclusions we have detailed above.
The only other issue is the quantum. While the record shows that the puncture wound caused Renee more problems than an ordinary wound would (some osteomyelitis was incurred) nevertheless the medical testimony indicates that he has no residual disabilities that would disable him. Considering the course of treatment that he underwent, the pain and suffering he encountered, and his inability to participate in sports, etc., during the period of his healing, we think the award of $5,000 in general damages is sufficient.
For the reasons above assigned, we affirm the judgment appealed from.
AFFIRMED.